I'm Suzanne Elliott and I'm here on behalf of Kevin Light-Roth arguing a brief written by Justice Cheryl Gordon-McLeod, now Justice Cheryl Gordon-McLeod of the Washington State Supreme Court. The question in this case is whether the Washington State Court of Appeals conclusion that witness Justice Van Brackle was not offered any benefit in exchange for his testimony for the State was an unreasonable determination of the facts. In this case, this is a homicide prosecution in the state of Washington where there were three possible perpetrators of the crime. Two of those perpetrators came initially to the police and blamed the third. That would be Mr. Light-Roth. Light-Roth, Stream, and Hiley. Yes. Mr. Stream, as far as I could tell from the record, was never charged. Mr. Hiley was allowed to plead to a misdemeanor. Mr. Light-Roth was charged with second-degree murder. During trial, his trial attorney identified a new witness, and that was Mr. Justin Van Brackle. And what trial counsel, defense counsel, said was Mr. Van Brackle is going to come in and testify that two facts that would have discredited Mr. Hiley's account of why he was less culpable than Mr. Light-Roth. Now, Mr. Van Brackle was never going to testify as to witnessing the murder, correct? It was going to have to do with the car and the disposition from that point. Apparently, there were some pictures of the car, I think, in Mr. Light-Roth's cell. Yes. So the question was where the body was. So, I mean, essentially, I'm understanding you to say that the state factual determination that you're saying was unreasonable has to do with whether there was an immunity agreement. Yes. There were actually several allegations, but the certificate of appealability was granted on the issue of whether or not the Washington State Court of Appeals erred when they. Now, it's basically undisputed that there's a written immunity agreement, correct? It's not written. It is a statement. Well, that's undisputed. There's not a written immunity agreement. There's not a written immunity agreement. What happened was after trial, Mr. Van Brackle's attorney, Jerry Stemmel, filed a declaration because Mr. Light-Roth had brought a motion for new trial. And in that declaration, he said, well, there weren't, we didn't get any consideration as to the sentence. But, in fact, because I was doing a good job here, I did ask for testimonial immunity for Mr. Van Brackle in his own case. Because what Mr. Van Brackle told the police when he recanted his original. So Mr. Van Brackle's case has nothing to do with the homicide that we're talking about here. But he obviously, if he's going to testify here, and he, I mean there appears to be some discussion that, okay, whatever you say there, I'm not going to use against you in your own case, whether you. Well, it's pretty significant because what he told the police was, I took money to lie for Mr. Light-Roth. So if you want me to come in and testify and say that, you've got to give me some testimonial immunity and don't add perjury or attempted perjury or obstruction of justice charges against me. So Mr. Stimmel says that was the agreement. Well, how is this affected by the fact that the government recommended a high-end sentence for Mr. Van Brackle after he testified against Mr. Light-Roth? Why doesn't this undercut the claim that he offered Mr. Van Brackle immunity or an inducement to testify? I don't think what he, the sentence that he got for the robberies or the burglaries that he was convicted of is where the benefit came. The benefit came in that he did not get charged with this obstruction of justice. If you take what he said to be true, what Mr. Van Brackle said to be true, which was Mr. Light-Roth offered me money to testify, he got a pretty good deal when he told the police that, and then they didn't file charges against him. So he didn't get so I think what Judge Nelson is saying, he didn't get benefit in his own case. I mean, he might have, but clearly, let's just say that there was some discussion that was going on here, and that was never turned over. Yes. But, you know, so I guess from the standpoint and what the state court found that there really was not an immunity agreement. Well, actually, this is where. . . And it has to be unreasonable. Now, not what we would have done because you're under the EDPA lens. Yes, of course. I understand all the standards of review are against me. Right. Here's the problem. In this case, the factual finding was made by an appellate court. And, yes, the United States Supreme Court has said you, the Ninth Circuit, must give deference to fact-finding from any court in the state of Washington, even the appellate court, even though appellate courts, of course, as this Court well knows, are not ordinarily triers of fact. So what happened here was they submitted what in Washington is a habeas petition, a personal restraint petition, and attached to it were all these declarations. The Court of Appeals, Division I, in one paragraph basically says, we find that the prosecutors have flatly denied that there was any consideration here given to Mr. Lightroth. It appears that they never actually mentioned this immunity agreement or Mr. Stimmel's declaration. Well, they clearly viewed that narrowly. You know, they clearly viewed that narrowly. And I don't think anyone, well, I can't speak for my colleagues because we haven't discussed the case, but I would agree with you that they clearly viewed that sort of pretty literally. Right. And so there has to be some sort of, and I've now submitted supplemental authority, and I think it's Mielke versus Ryan and Hurls, which, you know, there has to be some limit to appellate factual finding. And when it comes down to, let's assume they did read that statement that said there was an immunity agreement here. When it comes down to making judgments of credibility, that is it's Mr. Stimmel who had no dog in this fight. He was just representing Mr. Van Brackle, and he was doing what he should have done, which was getting him immunity, as opposed to what the prosecutors said. And they, you know, unfortunately, well, I think there's two problems with, not with prosecutors, but here is. One, prosecutors don't understand the nature of benefits given to defendants. They think, I only gave him $50. Oh, I only told him I wasn't going to charge him. That is viewed in a very different lens by defendants and defense counsel. Well, it seems to me your argument is that, you know, we should inquire into and question the state appellate court's fact-finding ability or authority or something. Right? And I don't think there's any Supreme Court case that supports that. You say we have to accept it unless it's unreasonable? I think, I think, I'm not asking you, you have to accept it unless it's unreasonable, but I think you also have to view it through the lens of what kind of fact-finding took place. And this Court. I mean, you want us to review, just like, say, we would review, you know, the facts from a trial court. A federal trial court saying, well, you know, is it supported by evidence? You know, was it, was there opportunity to cross-examine and stuff like that? In other words, could the petitioner say, well, yeah, I challenged those facts found by the state appellate court because we never had a chance to cross-examine those witnesses. And so we were denied our Sixth Amendment right or something like that. Could the petitioner do that in state court or in our court? No. I think what, no. I cannot simply say this ought to have been a fully formed factual dispute where I got to call in the prosecutors and bring in the witnesses. But I think when you look at the term what is reasonable and what is unreasonable, when a state appellate court enters into a factual finding, I think there is less urgency to uphold it when it's the appellate court making a credibility call. And you have said that in IRP. IRP? IRP versus Arinsky. And I think Hurls. Well, we didn't say there was a different standard or it's less. No, but you have looked more critically at the reasonableness of a, I think that's what I'm saying. You've looked more critically at a determination of credibility by an appellate court without a testimony and found in a number of cases that that fact finding was unreasonable. Let's assume that it, I think they definitely, it was sort of a narrow ruling, but that a narrow interpretation, you still have to show it was material, right? And there's pretty significant evidence against Mr. Lightroth in terms of in this case. And Mr. Van Brackle, well, I love the fact that your client came through the ceiling too. That was, you can't make those facts up as far as that goes. But there was a fairly significant case against him. And so in terms of materiality, even if I were to on some level agree with you that they read this pretty narrowly, how do we show it's material? Well, he was pretty heavily impeached anyway. Well, let's be clear here. We're arguing a NAEPU violation, which is that the prosecutors knew that they had given Mr. Van Brackle this testimonial immunity. And when he got up and said, I got no benefit, they were obligated to come forward at that moment and tell everyone. Well, in fact, that's not true. So the question is whether or not there was a reasonable likelihood then that this, that Mr. Van Brackle's testimony affected the jury verdict here. If you look at the citations to the closing argument contained in our opening brief, Mr. Van Brackle became, the state considered him very key in this case, and very key in the sense that they needed to dispel the notion that Mr. Sweet and Mr. Hiley were the actual murders and that the old adage, the first one through the door gets the deal applied to them, and then the prosecutors had settled on Mr. Lightroth. And so the prosecutors' incentive with Mr. Van Brackle and what they argued to the jury was he has consciousness of guilt. He has consciousness of guilt because he ran, he has consciousness of guilt because he tried to pay a witness, and that is why he was so important. There was so much evidence. Let's assume that there is evidence that witnesses lied. Nonetheless, we have Mr. Lightroth implicated himself. Eyewitnesses said he was a shooter. It was his gun, et cetera. Wouldn't Lightroth, I mean, the probability of his being convicted was very high. I think that this is, that everyone else who testified had a motive, and there weren't a lot of forensics. They had to put, it was those three gentlemen who were in the room, and all three of them were at risk of a murder conviction. And so Mr. Sweet and Mr. Hiley had overwhelming motives to lie. And so it was very, very important for the government to come up with anything to bolster their choice to charge Mr. Lightroth over Mr. Sweet and Mr. Hiley. Do you want to reserve some time? Two minutes left. Thank you. Thank you. May it please the Court, John Sampson, Assistant Attorney General for the State. The Court should affirm the district court judgment because the state court adjudication of this claim was not objectively unreasonable. The state court reasonably determined that Mr. Lightroth had not proved the suppression of material exculpatory evidence. He did not prove a false statement or a false testimony was given, and he did not show the required prejudice under both Brady and Napoo. Well, I guess from the standpoint, certainly, I would have to say, now whether under the ADPA lens this should be disturbed is a whole different situation, but certainly, I mean, his lawyer had had, there isn't a written immunity agreement. It's not the classic in that he wasn't, he's not implicated in, he wasn't one of the murderers. He's not one of, and then he didn't, apparently, no one was grateful for what he did, so he didn't get some favorable recommendation in his own case. So it doesn't fall in the classic, but it's a pretty narrow reading in terms of when he, he did have some assurances that with what he was going to say, that nothing worse was going to happen to him, and other people, when they get on this stand, don't. When they swear to tell the truth, the whole truth, nothing but the truth, it means that, and if you're going to, you know, any other witness, if you get up there and you're going to distance yourself from a prior statement, it may not be perjury because maybe it wasn't under oath previously, but there's some risk of, and in federal court, you know, lying to a federal officer or any number of things. So he did get, he got something there. He got some sort of assurance. He kind of went in there with a, you know, a lighter feeling that he could do whatever he felt like doing and nothing worse would befall him than he had already done. With a guy like Van Brackle, you don't want him to feel lighter. You know, you want him to feel the full force of the law on him. Yes, Your Honor, and I think that it's important to look at what the attorney, Mr. Stimmel, actually said in state court in his declaration, and this was a declaration that was before the trial judge when the trial judge made his findings a fact that there was no deal, no consideration. So the judge looked at this declaration, and this is at Excerpts of Record 13. In the fifth paragraph, he said that he did receive a telephone message from Nelson Lee saying that, the prosecutor saying he was going to call Van Brackle to testify, and Mr. Lee informed him that the prosecutor's office would not attempt to use Mr. Van Brackle's testimony in the Lightroth case against Mr. Van Brackle in Van Brackle's own trials. So what he was saying was not he has immunity for anything he says. In other words, if he lied in Lightroth's trial, he could be charged with perjury. What he was saying was if he makes a statement that, yes. That's true. Every immunity agreement, it accepts perjury. It doesn't mean he's not, you know, offered consideration. If you tell the truth, we'll give you immunity, right? No, Your Honor. There's different types of immunity. There's transactional immunity. Most of these are limited-to-use immunity. Yes, Your Honor. I mean, that's almost universally true. So to say, you know, it accepts perjury is not the same as saying he's not given any consideration. They all do that. But then the next sentence where he says this was, in fact, giving testimony immunity, then he says, Mr. Lee made it clear to me he was not offering any benefit or mitigation of Mr. Van Brackle's own pending charges or sentencing consequences in exchange for Van Brackle's testimony against Lightroth. I know that. So as Ms. Elliott says, all he was offered was, well, okay, you know, the promise not to be prosecuted, in effect, for perjury, right, or for some kind of obstruction of justice. No. I mean, that's a consideration. In other words, the promise is we won't bring new charges against you. That's not what he said. What did he say? What he said was I won't use what he says against him in his own trial. In other words, if Van Brackle were to say in testifying against Mr. Lightroth that I committed some robberies and to get me off of these robberies, Lightroth said this, he wouldn't use that. He never said I won't charge him with perjury. I won't, if he lies on the stand, I won't come after him. All right. So what are you saying? To say, to promise I won't use these statements against you in your own trial is not consideration? The defense attorney did not see that, and then the trial judge, in looking at the entire record before him, found as fact there was not consideration. There was not an agreement. There was not consideration. There was not a benefit given. So that is what is before the court now. And to overcome that, the petitioner must show either that that was objectively unreasonable and he must under 2254E1 rebut it by clear and convincing evidence. So what the defense attorney then says that in light of the prosecutor's promise, I inform Mr. Van Brackle that his testimony in the Lightroth case will not increase or decrease his legal jeopardy in his own cases. In other words, they were really separate. So he was not giving a benefit or consideration as to Van Brackle's case. It was as if nothing good or bad was going to happen to him as a result of Van Brackle testifying. It's just he's going to testify. And then in the sentencing proceeding. So in other words, the state court's finding was, you know, if we accept that, that as you say nothing good or bad was going to happen to him as a result of this, I guess you would call that kind of neutral. But that kind of we'll call a promise is not a benefit that gives rise to a Brady obligation. Yes, Your Honor. Is that your argument? That's my argument. Is there some kind of appellate case that says, you know, that's not a Brady consideration that has to be disclosed that, you know, if you say, well, nothing good or bad will happen to you if you testify. Suppose he says, so don't worry. I mean, is there a case that says that's not a benefit, that kind of promise? Brady, I can't point out a case that deals with that specific, but what Brady requires that the evidence that was suppressed must be exculpatory. Or impeachment. But impeaching, to be impeaching, it must be evidence that would affect the material outcome or the outcome of the case. So that gets into the materiality. But so if we're looking, all right, so testimonial immunity means you can't be charged with perjury? That's, I believe that's what testimonial immunity would be, Your Honor. I think there's use immunity where if you say something, I can't then use that against you to charge you with a new crime. And then you get immunity from, like, okay, if he had been one of the murderers, alleged murderers, that whatever he said about that, then later they couldn't say, like, well, now I'm going to charge you with, I can use that to charge you with murder. So I would frequently say, like, that Hiley would have liked that. Yes, Your Honor. Or, you know, or Stream might have wanted that. Or any, because they were implicated in the murder of Bonnet or, what's that his name? Bonnet. Bonnet, yes. So he wasn't, so the state court basically found that, I mean, he wasn't, he didn't get testimonial immunity. It's undisputed that there wasn't a written agreement. But, and you're saying that it's a reasonable interpretation of the facts, that he wasn't promised that he wouldn't be charged with perjury, that, and that's what? That's what the trial judge found. That's what the trial judge found. So, and that he wouldn't get any, he wouldn't get a benefit or hurt in his own case. Yes, Your Honor, because, for instance, if he were to testify in Light Roth's case that Van Brackle actually held a gun and robbed somebody, they would not use that testimony, that part of the testimony, and present it as evidence in Van Brackle's own case, because they already had all the evidence they needed. But you don't have a case right on point. Let me ask you, maybe move to something that might be easier. Let's assume, hypothetically, that some of us, at least myself, finds it difficult to say there was no Brady violation or no promises. So we have to move on then, right? Both Brady and Napoli require some kind of materiality or presence, some kind of showing. Yes, Your Honor. I think it's your, I don't want to call it fallback, maybe it's stronger, but your alternate position is that, in that event, it was harmless, right? Because I think Judge Nelson kind of went through some of it, but the evidence is very strong against him. It wouldn't have made a difference. Is that what it amounts to? Is that an easy ground for you? Yes, Your Honor. As a matter of fact, it's an issue this Court can decide the case on, so it doesn't even have to reach the issue of whether evidence was actually suppressed or whether false testimony was given. They don't, this Court doesn't have to even consider if there was an agreement. What evidence was there impeaching Mr. Van Brackle in the trial? Because he was impeached, wasn't he? Yes, Your Honor. There was extensive cross-examination. There was extensive cross-examination about where he was, what he did, why he came to provide this testimony in the first place. Well, and then wasn't, there was evidence about the pictures of the car that were found in Mr. Lightloth's cell that supposedly he said those were shown to him so that he would be able to give more credible testimony? Yes, Your Honor, and it was an actual picture of the victim's girlfriend's car that was found in the cell. That was used to dump the body, right? Yes, Your Honor. Yes, Your Honor. So there was corroborating evidence to support Van Brackle's testimony as well that Mr. Lightloth had fabricated this story. And then was Mr. Van Brackle a convicted felon already? Was he impeached that way? I do not recall, Your Honor. I read the transcript again today, and I just don't recall. Okay. It was not yet. Yeah, I can't say yes or no if he was at that time. But it was certainly presented to the jury that he was facing charges for felonies at that moment. The other issue of the prejudice or the materiality is what other evidence was presented of guilt, and there was extreme evidence presented of guilt. There was two eyewitnesses to the murder, Mr. Hiley and Mr. Stream, and they both testified to the actions of Mr. Lightloth. There was Mr. Lightloth's own statements to the police, including a volunteering that he could provide the Palm Pilot before it was even known that there was a Palm Pilot involved. There was his attempts twice to escape custody, running from the police and then escaping from the handcuffs and climbing into the ceiling. There was the fact that the bullet came from a . . . It was a .45 caliber bullet that comes from a gun that Mr. Lightloth had. The state court reasonably determined that this evidence . . . Was it a ballistic match? I don't believe they ever found the actual gun, so I don't think they could make that formal of a match. But what the state court found was that in light of the evidence presented at trial, even if there was an undisclosed immunity agreement, there was not prejudice required for Brady and Napoo, and for Mr. Lightloth to obtain relief, he must show that that determination was objectively unreasonable. You know, what I didn't understand was the prosecutor's focus on Mr. Van Brackle's and Mr. Hiley's credibility, in light of all the other evidence. It seemed to suggest that the evidence about their meetings with the prosecutions . . . That the evidence is material. What is your response? Well, I think that the defense tried to make that an issue in cross-examination of both Mr. Hiley and Mr. Van Brackle, so it was presented to the jury. Well, Mr. Hiley and Mr. Strain went to the police department, too, right? First . . . I mean, you could say first to squeal gets the deal. You could say that. But the flip side is that they went there, and then I think Mr. Lightloth also said, I bet those darn guys, the first thing they did was they came and snitched me off or whatever. Yes, and I think the language was much stronger than that, Your Honor, that he used. It's court. I don't have the exact quote, so I didn't want to . . . Yes, Your Honor. There was also testimony that Mr. Hiley and Mr. Strain were highly emotional, crying throughout the time that they were talking to the police. That evidence came in as well to show that they truly did not commit the murder. They were simply reacting. And there was also testimony about the fear that they had for Mr. Lightloth, and that, in fact, later when Mr. Hiley did plead guilty to a reduced charge, it was because the prosecutor determined he did have a valid arrest offense because he was afraid for his own life, and that's why he helped hide the body. There was also testimony regarding Mr. Lightloth's statements to the women that came in and saw Mr. Burnett under the jacket, and him telling them to leave him alone, and then Mr. Lightloth carrying the body out when they were out on the patio. All the evidence together shows that this is really not material. It's not prejudicial, and the state court reasonably determined that. And because the state court reasonably determined that, even if he's right that the state court erred in finding no agreement, he still loses on his claim, and we'd ask the court to affirm. Thank you. Thank you. Briefly, in rebuttal, I would argue that, with all due respect, Mr. Sampson's interpretation of what Mr. Simmel said is not a reasonable reading of the record. I also would argue that even if it is, that is a reasonable reading of the record. Mr. Van Brackle was very concerned. He would not – let's put it this way. I cannot imagine a situation in which Mr. Van Brackle would have come in and testified for the state if he thought he had gotten up there under oath and said, you're right, I exchanged with Mr. Lightloth this agreement that he'd help me out in my robbery cases, which at that point he was saying he hadn't committed, in exchange for my testimony in his case. That would have prevented Mr. Van Brackle then from entering the Alford plea, which he later admitted, and he would not have gotten the low end of the standard range. Have you honestly ever perceived of any logic by what – by why some people do what they do in our line of work? Your Honor, I've been doing this for 30 years, and it never ceases to amaze me why people do or take actions that are inexplicable. But let me just say this. That debate over what that meant is precisely why in these kinds of cases there has to be something other than an appellate fact-finding. You know, maybe it would have been better had the trial court put on these witnesses and we could test their recollection of these events. I just want to refer the Court, which I know you're aware of, to Ms. Hurls v. Ryan at 706 F. 3rd, 1038-39, where there is a citation to those cases in which this Court has found that the lack of an evidentiary hearing has resulted in unreasonable findings by the state courts. And I would suggest that this is precisely one of those cases. The Washington State Court of Appeals blew over the immunity argument because it was presented on paper and there weren't substantial findings. So I would ask this Court to find that we have overcome the presumption of reasonableness, that there was an APU violation, and reverse this matter and return it for further proceedings. Thank you both for your argument. You both did an excellent job of advocating your positions. We appreciate that. It's helpful to the Court. Thank you. This matter will stand submitted.
judges: Nelson, Tashima, Callahan